## E. H. COGBURN *v*. MARGARET HUNT.

1. TAXES. *Void deed. Lien of purchaser. Correction of assessment-roll.*
   Where a tax-deed from the State is void because of a patent ambiguity in the description of the land, the purchaser has no right in chancery to have the assessment-roll corrected for the purpose of charging the land with a lien for the taxes paid by him in the purchase and subsequently, upon the ground that the defective description in the assessment-roll, which was the same as that contained in the deed, was based upon the list returned by the owner to the assessor, and that such return amounted to an agreement that the land should be assessed by that description, and that the erroneous description in the assessment occurred through the fraud, mistake, or ignorance of the owner of the land.

2. SAME. *Imposition and collection. Attitude of tax-payer.*
   There is no element of contract, agreement, or consent in any of the proceedings for the imposition or collection of taxes; but the whole of the pro-

ceedings is *in invitum* as to the tax-payer, who stands passive, consenting to nothing, and demanding that the officers of the law shall show their authority for every step taken by them.

3. SAME. *Void deed. Lien for taxes. Rights of purchaser under Code of 1871.* Under the provisions of the Code of 1871 in relation to the public revenue, the purchaser from the State, of land sold for taxes under such provisions, whose deed is void because of a patent ambiguity in the description of the land, which, being also in the assessment, avoided the sale to the State, may, by a bill in chancery, charge the land for the amount paid out by him for taxes on the same, in the purchase thereof and subsequently, where he can show clearly what land was sold to him, and that it was at the time delinquent for unpaid taxes; and, in making such proof, the complainant may resort to other evidence than that afforded by the assessment-roll and the tax-deed. *Yandell* v. *Pugh*, 53 Miss. 303, distinguished.

APPEAL from the Chancery Court of Warren County.
Hon. U. M. YOUNG, Chancellor.
The case is sufficiently stated in the opinion of the court.
*Nugent & McWillie*, for the appellant.

The question here presented is, whether the Chancery Court can reform the assessment of property so as to make it represent what the parties intended it should, and then subject the property assessed to the payment of the taxes for the non-payment of which it was sold, where the assessment was given in by the owner. In *Cummings* v. *Steele*, 54 Miss. 648, it was held that a deed containing a patent ambiguity could be reformed by the Chancery Court. If, through fraud, mistake, or accident, a contract has not been made to speak the agreement of the contracting parties, it will be reformed to represent what they intended, and, thus reformed, will be enforced as if originally so drawn.

Taxes assessed upon land are a lien upon the same, after the first day of January of the year in which the assessment is made. Code 1871, sect. 1665. A third party paying taxes upon property is entitled to subject it to sale for reimbursement. *Harrison* v. *Harrison, ante,* p. 174. Sect. 1718 of the Code of 1871 fixes the rights of the purchaser of tax-lands; and where the land, by a proper proceeding in equity, can be definitely ascertained and located, there can be no objection to

the enforcement of the lien. There was no error in the assessment, as to the value of the land, and the tax-payer owed the tax on this value ; and the lien existed in favor of the State, and could be enforced in equity. Whether the lot was described or not, the lien existed, and will continue to exist until discharged. It can be enforced by a purchaser from the State, even where the title is void. *Allen* v. *Poole*, 54 Miss. 334 ; *Davidson* v. *Wallace*, 53 Miss. 475 ; Rev. Code 1871, sect. 1718. This section of the Code was intended to apply to tax-titles which were void from any cause. *Arrighi* v. *Duncan* (MS.). The statute makes it the duty of the citizen to give in, under oath, a list of all his taxable property, and its value ; and this list is made the basis of the assessment. Here, this was done, and the description of the property was given in by Hunt and accepted by the officers of the State. Both parties supposed it was correct, and their conduct conformed to such belief. There was the *consentio mentium*, and, the agreement that the land should be taxed at the value of $2,500. *Arrighi* v. *Duncan* (MS.) ; 54 Miss. 589. See also 7 La. An. 193 ; Cooley on Tax. 1, notes 1, 2.

*Miller & Hirsh*, for the appellee.

If courts of equity have the power to reform assessment-rolls, they are clothed with the authority of assessors and supervisors. If such authority can be exercised in one instance, it may be in all cases ; and the result would be, to transfer to these courts the duty of revising and correcting the assessment-rolls, in all cases of accident, omission, mistake, etc. If a court of chancery will correct a mistake or omission in the assessment-roll, why can it not also correct the subsequent proceedings, including the tax-deed, and thus render the purchaser's title valid? But it has been decided that a tax-collector's deed cannot be reformed. *Bowers* v. *Andrews*, 52 Miss. 602, 608. Sect. 1718 of the Code of 1871 provides for the enforcement of liens for taxes, in favor of purchasers, but it does not give the Chancery Court any jurisdiction over assessments.

Where a power derived from a statute is defectively executed, equity will afford no relief. *Bright* v. *Boyd*, 1 Story, 478; *Miller* v. *Palmer*, 55 Miss. 323; Blackw. on Tax Titles (4th ed.), 446, 493. The assessors and supervisors derive their authority from the statute. An assessor is not the representative of the State, empowered to make agreements with tax-payers dispensing with such an assessment as the law requires. His authority is not derived from the consent or agreement of the tax-payers; and whether an assessment is made against the protest of the tax-payer, or is based upon a list furnished by him, it is equally the act of the assessor.

A court of equity certainly has no power to correct a judgment rendered by a court of competent jurisdiction. And it is well settled that assessors are clothed with *quasi*-judicial powers. Cooley on Tax. 157, 158, 550; Hill. on Tax., sect. 130. Their assessments, when made and acted upon by the board of supervisors, become judgments, and are not subject to be reviewed, modified, or reversed. *Western R. Co.* v. *Board of Assessors*, 48 N. Y. 518; *Barhyte* v. *Shepherd*, 35 N. Y. 238. See also Bürr. on Tax., sect. 102. This court has distinctly decided that a court of equity has no jurisdiction to revise or correct an erroneous assessment. That power is in the board of supervisors. *Brooks* v. *Shelton*, 47 Miss. 243. And the action of the board of supervisors is conclusive. *Home* v. *Green*, 52 Miss. 457. See also *Virden* v. *Bowers*, 55 Miss. 1; Blackw. on Tax Titles, 499; *Miller* v. *Palmer*, 55 Miss. 323.

"No amendment can make valid a tax-sale that was void for want of a proper description of the land in the assessment and subsequent proceedings." Cooley on Tax. 242. If the proceedings of sale upon which a tax-title depends cannot be corrected, it must follow that an assessment upon which the lien depends cannot be corrected. "It is the return" of property by the assessor, which fixes its identity and liability to taxation. Cooley on Tax. 285.

CHALMERS, J., delivered the opinion of the court.

Complainant, holding a tax-deed to a lot of ground in the city of Vicksburg, imperfectly described in said deed, brought ejectment thereon and was defeated, because the uncertainty of description, being patent, could not be explained by extrinsic evidence. The case is reported in 54 Miss. 675.

He now files this bill, for the purpose of fastening upon the property a lien for the taxes, with interest and damages, paid out by him in the purchase and since. The bill charges that the description in the deed was the description given in to the assessor under oath by the owner; that but for said act of the owner in misdescribing it, the land would have been properly described; that the taxes paid were due and unpaid at the date of the sale, and constituted a lien on the property, which was by him discharged. The prayer is for a reformation of the assessment-roll, a decree against the owner for the amount paid, with interest and damages, and a condemnation of the land for its payment.

The demurrer, of course, admits the facts. The bill cannot be sustained upon the theory mainly pressed in the arguments of counsel, to wit, that the return of the property by the owner to the assessor amounted, in law, to an agreement that it should be so described and listed, and that, the error in the description having occured either through the fraud, mistake, or ignorance of the owner, is amendable against him. If this position be correct, complainant has stopped short of demanding the full measure of relief to which he is entitled. If it be true that the tax-payer, in listing his property for taxation, enters into a contract with the State, whereby he agrees that, as between himself and the State, it shall be known as it is by him described, it must follow that any error of description which occurs through his fraud or mistake can be corrected at the suit of the State or its vendee, not only for the purpose of fastening a lien for the taxes, but also for perfecting an otherwise invalid title; so that the logical prayer of complainant's bill, on this theory, would have been to demand a

reformation of the tax-deed, with a view of perfecting his title and acquiring the ownership and possession of the land.

But it is well settled that there is no element of contract, agreement, or consent in the imposition or collection of taxes. " Taxes are the *enforced* proportional contribution of persons and property, levied by authority of the State." Cooley on Tax. 1.

The State neither needs nor seeks the consent of the taxpayer in imposing or enforcing this burden, except as he has consented at the ballot-box to the investiture, in officers of his choice, of the exercise of these high powers.

It is because of the absence of all element of consent or contract, and because the whole proceeding is *in invitum* as to the tax-payer, that the power of making sale of property for unpaid taxes is said to be *stricti juris*. The government claiming the sovereign right to impose the burden, and to confiscate the property of the citizen for its discharge, the latter stands passive, consenting to nothing, and demanding that the officers of the law shall show their authority for every step taken by them. Undoubtedly the State may compel the assistance of the owner in carrying out the scheme, by imposing upon him any duties it sees fit, and by enforcing their performance by appropriate penalties. Thus, it may punish him for a fraudulent return by declaring it perjury; or may mulct him in damages for one accidentally false, if it sees proper to do so. But neither the State nor its grantees can ever claim that in any of these things there was a contract. Whatever burdens the State imposes, or whatever presumption it raises for the benefit of those deriving title through it, spring from the sovereign will, as embodied in the written law, and do not arise *ex contractu*. Unless, therefore, there is some provision of statute law upon which the relief prayed can be granted, it is inadmissible under the general principles underlying the law relative to taxation. Blackw. on Tax Titles (4th ed.), 446, 493; Cooley on Tax. 242; Burr. on Tax. 366.

Art. 11 of the revenue chapter of the Code of 1871 was

enacted for the purpose of protecting the rights of purchasers at tax-sales, and introduced into our law a new and valuable feature.

The striking off to the State of delinquent lands, and their consequent withdrawal from the revenue-producing property of the Commonwealth, was felt to be a very great and growing evil, whereby the burdens of taxation grew year by year more onerous on those who promptly paid their taxes. For the purpose of correcting this, and of encouraging private persons to become purchasers at these sales, a scheme was devised whereby such purchasers should, in every instance, acquire either a good title to the land sold, or, in default thereof, should receive back their money. It was therefore enacted, by sect. 1719, that where the land was exempt from taxation, or where the taxes had in fact been paid before sale, the purchaser should receive back his money from the State or county treasury; and by sect. 1718 it was, in effect, declared, that in all other cases, where from any cause he failed to receive a good title to the land sold, he should be allowed, by bill in chancery, to fasten a lien upon it for all taxes paid, with interest and damages. The intention evidently was, that no conceivable case should arise in which the purchaser should lose both the land and his money.

If the sale was valid, he would get the land; if the taxes were due, but the sale was invalid, the land should stand bound to him for repayment of his money; if no taxes were in fact due, the State and county would hand him back his money. Such legislation was not only within the limits of the constitutional power, but was eminently wise, just, and proper. Certainly the delinquent owner cannot complain of it, because in no event can he be damnified; since nothing can be collected from him except by showing that the taxes paid were a valid charge, which he was bound, but had failed, to meet.

The only question that arises, therefore, is, whether the statute has by fit words accomplished its manifest purpose, or whether, by oversight, it falls short of reaching the case of a

patent ambiguity in the description of the land. Certainly there is nothing so sacred in a patent ambiguity as places it above legislative power, or forbids us to hold it embraced by any language that seems fairly intended to cover it, as well as all other irregularities and invalidities.

By sect. 1676, the mode in which lots in towns and cities should be designated on the assessment-list is indicated, — to wit, by the numbers of the lots and blocks ; but it is provided, that " no failure to observe any of these requirements shall be held to vitiate any assessment, if the land be so described as to be identified." The meaning of this, evidently, is, that there must be identification in the mode prescribed, or in some other mode, in order to render a sale perfect so as to pass the title. It was because of this lack of identification that the sale in this case was declared invalid when the ejectment suit between these parties was heretofore before us. *Cogburn* v. *Hunt*, 54 Miss. 675.

Now, turning to sect. 1718, we find it declared that " the amount paid by the purchaser of land at *any* sale for taxes, and an addition of fifty per cent on said amount, and interest on the sum paid, at the rate of ten per cent per annum, * * * shall be a lien on said land in favor of the purchaser, and the holder of the legal title under him ; * * * and the holder may enforce said lien by bill in chancery."

This evidently presupposes that the tax-title is invalid by reason of a failure to observe some of the requirements laid down in preceding portions of this law, since, if those requirements have been observed, a good title will have been obtained, and there will be no occasion to fasten a lien on the land for the money paid out. One of the requirements, the non-observance of which defeats the title, is a description which of itself shall identify, without resort to parol proof. That there are no inexorable reasons for this requirement, and that the law-giver might have declared that the land might be identified by extrinsic evidence, is made apparent by the fact that a few years later it was so enacted ; and if this sale had taken

place under the later statute, the ejectment suit would have been sustained, despite the ambiguity in the deed. Acts 1876, p. 139, sect. 19. While such was not the law at the date of this sale, it serves to show the intent of sect. 1718 in its protection of the rights of purchasers. The revenue law of the Code having laid down many requisites and formalities to be observed in the assessing, listing, and sale of lands for taxes, one of which was that it should be so described as to be identified upon the face of the rolls, and then having followed this up by providing that, in any and all sales, the purchaser who has failed, by reason of the non-observance of any of the requirements, to obtain the land, shall be allowed, in any event, to fasten a charge upon it by bill in chancery, we conclude that his right extends as well to a case of void description as of any other defect, and that when he comes to file his bill, if he can show beyond doubt or cavil what land it was that was sold to him, and can show, further, that said land was at the time delinquent for unpaid taxes, he will be entitled to fasten a charge upon it, though in so doing he is forced to resort to other evidence than that afforded by the assessment-rolls and the tax-deed.

That it was entirely competent for the Legislature so to enact, will not be disputed. That they have so enacted, is, we think, fairly deducible from the spirit and the letter of the statute.

In *Yandell* v. *Pugh*, 53 Miss. 303, it was declared impossible to fasten a lien for taxes on land which could not be ascertained. The remark, of course, was made with reference to the case before us, in which no attempt had been made, or was offered to be made, towards indentification. It was a mere request to fasten a lien on land which it was confessedly impossible to identify, or which, at least, the parties did not ask leave or profess an ability to identify.

Decree reversed ; demurrer overruled. Sixty days given to answer.