Brief for appellant.

## DAVID MAYER v. J. W. PEEBLES ET AL.

1. TAX-SALE. *Land held by levee board exempt. Lien under sects. 1718, 1719, Code of 1871.*

Land acquired by the Board of Levee Commissioners under an act approved February 13, 1867, at a valid sale for levee-taxes, cannot be again legally sold for taxes while thus held by the levee board, because of the provision of. sect. 13 of that act, which declares that such lands "shall be exempt from State taxation, for levee purposes or otherwise, until the same shall be sold or disposed of by this board." And where 'land thus held by the levee board has been again sold for taxes the sale is void, and the purchaser, though he bought while the Code of 1871 was in force, has no lien under sect. 1718 or 1719 of that Code for the purchase-money paid out by him, and interest, cost, damages, and subsequent taxes paid, as provided in those sections.

2. SAME. *For illegal taxes. Lien under sects. 1718, 1719, Code of 1871.*

A purchaser of land sold for taxes while the Code of 1871 was in force could not acquire any lien under sect. 1718 or 1719 thereof, where the sale was void because the taxes for which it was made were illegal and could not have been legally charged upon the land.

3. SAME. *To levee board on wrong day. Subsequent sale. Rights of purchaser.*

A sale of land to the Board of Levee Commissioners on the eighteenth day of May, 1869 (there being no adjournment or continuance to that day), for the levee-taxes due thereon was void, because sect. 3 of the act of 1867, above referred to, required such sales to be made on the second Monday of May, which was the 10th of May of that year. And land bought by the Board of Levee Commissioners at a sale for levee-taxes on the 18th of May, 1869, and thus held, was not exempt from taxation by sect. 13 of the act of 1867, but might be again sold for taxes, and the purchaser thereof, under the Code of 1871, would be entitled to enforce the lien provided by sect. 1718 or 1719 of that Code, if he failed to get a title at such subsequent sale.

APPEAL from the Chancery Court of Issaquena County.

Hon. W. G. PHELPS, Chancellor.

The case is stated in the opinion of the court.

*L. Brame*, for the appellant.

It is conceded that complainant's tax-title was invalid. To say nothing of the other objections, the fact that the taxes were levied at an improper time rendered the sale illegal. It was, therefore, proper not to confirm the title. But complainant was entitled to a decree for the amount paid by him. Assuming that the land was sold to the levee board at the

time stated, the defendants are not in a position to rely upon the fact of that sale. But there was no sale to the levee board under which any title was acquired. The act of 1867 required the sale to be made on the second Monday in May. Acts 1867, p. 239, sect. 3. The second Monday in May, 1869, was the tenth day of the month. The sale was made to the levee board May 18, 1869. The sale was void for this error. *McGhee* v. *Martin*, 53 Miss. 519; *Harkreader* v. *Clayton*, 56 Miss. 383.

The land was assessed to H. W. Peebles, the ancestor of defendants, and through whom they derive title. They were in possession of the land at and before sale, enjoying the rents and profits, and have been all the time. This estops them from setting up the fact that the land was sold to the levee board.

The chancellor erred in holding that the land could not be sold because held by the board. He should have entered a decree for the full amount of legal taxes paid out by complainant, with damages, according to sect. 1718 of the Code of 1871. *Cogburn* v. *Hunt*, 57 Miss. 681.

*L. Brame* also argued the case orally.

*T. M. Miller*, for the appellees.

I do not deny the proposition that a sale made on the wrong day would be void, but do deny that the 18th of May was the wrong day for the sale of the land in controversy to the Board of Levee Commissioners. The law provided for the sales to begin on the second Monday in May, and it was made the duty of the sheriff to continue the sales from day to day until the lands were all sold. It is a fair presumption that the officer did his duty in the premises.

I insist that the chancellor did not err in his construction of the acts of 1858 and 1867. Sect. 13 of the latter (p. 246) provides in the plainest terms that all lands acquired by the levee board shall be exempt from taxation until sold or disposed of by the board. See *Gibbs & Hemingway* v. *Green*, 54 Miss. 592.

If it be true, as I contend, that the lands, while held by the commissioners, were exempt from taxation, then the sale to Mayer was absolutely void for all purposes, and the decision in *Cogburn* v. *Hunt*, 57 Miss. 682, can have no possible application.

*W. S. Farish*, on the same side.

I contend that the complainant had no lien upon the lands for the pretended taxes alleged to have been paid by him. Reference to the record shows that the lands in controversy were, on the eighteenth day of May, 1869, sold by the sheriff and tax-collector of Issaquena County to the Board of Levee Commissioners, commonly known as the " five-cent liquidating levee board ; " and, so far as appears from the testimony in this cause, all of said lands are still held by said five-cent liquidating levee board, except lots 5 and 6 of section 32, township 9, range 8 west, which were, on the eighteenth day of December, 1872, purchased by the defendants from the levee board.

There can be no question that lands, while held by the Board of Liquidating Levee Commissioners, are entirely exempt and freed from State, county, and all other taxes, except the liquidating levee-tax of five cents per acre, after the period for redemption expires. *Vide* sect. 13 of the act of February 13, 1867 ; Acts 1866–7, p. 246. The purchaser of lands thus held, at a sale for State and county taxes, could acquire no title and no lien for his money paid out.

COOPER, J., delivered the opinion of the court.

Appellant, on the sixth day of January, 1872, purchased certain land situated in Issaquena County, at a sale thereof for the taxes for the year 1871. On the first day of November, 1875, he filed the bill in this cause against the appellees and all persons having or claiming any interest in the land, praying for a confirmation of his tax-title to the land. Appellees answered the bill, setting up in defence the invalidity of the tax-sale, for certain reasons stated in their answers.

Appellant then amended his bill, praying for the establish-, ment of a lien on the land for the amount paid by him at the tax-sale, and interest and damages, and for all taxes paid by him on the land since his purchase. On final hearing a decree was rendered denying the relief sought, and from that decree an appeal was taken to this court.

The bill as amended, and the answers and proof, show, that the land was, prior to 1869, the property of the heirs-at-law of H. W. Peebles. It is situated in the levee district, and was delinquent for levee-taxes for the year 1868, for which, on the eighteenth day of May, 1869, it was by the sheriff of the county sold to the Board of Levee Commissioners. On the eighteenth day of December, 1872, the Levee Commissioners sold and conveyed a portion of the land to the "estate of H. W. Peebles." On the sixth day of January, 1872, the land was sold for the taxes of 1871, and purchased by appellant, who has since paid taxes thereon. The levy of the county taxes for the year 1871 was not made by the Board of Supervisors at the time required by law, but was made at an adjourned meeting of the board held on the 24th of September, 1871.

The decisive point in this case has been settled by two decisions of this court, made in the case of *Cogburn* v. *Hunt*, which will be found reported in 56 Miss. 722 and 57 Miss. 682. We are urged by counsel for the appellees not to extend the scope of these decisions ; to which we reply : it is impossible so to do, because the decisions themselves are as broad as the statute which they construe. In delivering the opinion of the court, as reported in 56 Miss. 723, CHALMERS, J., said : "Art. 11 of the revenue chapter of the Code of 1871 was enacted for the purpose of protecting the rights of purchasers at tax-sales, and introduced into our law a new and valuable feature. The striking off to the State of delinquent lands, and their consequent withdrawal from the revenue-producing property of the Commonwealth, was felt to be a very great and growing evil, whereby the burdens of taxation grew year by year more onerous on those who promptly paid their taxes. For the pur-

pose of correcting this, and of encouraging private persons to become purchasers at these sales, a scheme was devised whereby such purchasers should, in every instance, acquire either a good title to the land sold, or, in default thereof, should receive back their money. It was therefore enacted, by sect. 1719, that where the land was exempt from taxation, or where the taxes had in fact been paid before sale, the purchaser should receive back his money from the State or county treasury ; and by sect. 1718 it was, in effect, declared, that in all other cases, where from any cause he failed to receive a good title to the land sold, he should be allowed, by bill in chancery, to fasten a lien upon it for all taxes paid, with interest and damages. The intention evidently was, that no conceivable case should arise in which the purchaser should lose both the land and his money." And in the opinion delivered by CAMPBELL, J., reported in 57 Miss. 681, it is said : " Sect. 1718 of the Code entitles the purchaser at any sale for taxes, who does not get title to the land, to charge it with a lien for what he pays, and for other charges specified in the statute. It is not a subrogation of the purchaser to the right of the State. It is a statutory right to go against the land to which the purchaser gets no title.    *    *    * If the purchaser were merely substituted to the right of the State, and the State had none, by reason of a failure of the assessment, he would have no right as to the land.    *    *    * If land is liable to taxation, and an attempt is made to tax it, and the taxes are not paid, and it is sold for taxes, and the purchaser, from any cause, fails to get title, sect. 1718 of the Code applies." If either the assessment of the property, the levy of the tax, or the sale for taxes is void, the purchaser acquires no title to the land ; but neither a valid assessment, levy, or sale is essential to entitle him to the lien conferred by the statute. This lien exists only where, by reason of some radical defect in the proceedings, they are insufficient to transfer title ; otherwise, it would be to give the purchaser a lien on his own property. It is independent of any lien conferred on the State by the assessment of the property and the levy of the

taxes. Wherever there has been an attempt by the agents of the State to subject the land to taxation, to which it might have been subjected and for which it might have been sold, and if in such proceedings there has been a sale for such taxes imposed, or attempted to be imposed, insufficient to confer title, because of the omission on the part of some agent to do a thing required by law, in the manner or at the time required, and the owner has not redeemed within the time prescribed by law, the lien provided for by sect. 1718 arises for the protection of the purchaser.

If the taxes attempted to be collected are themselves illegal, and not merely irregularly levied, the lien would not be conferred for their repayment; but where the objection is merely to the manner in which the powers conferred have been exercised, the lien exists. Experience had demonstrated the impossibility of devising any revenue-system sufficiently comprehensive to include the necessary machinery and sufficiently simple to insure its regular and methodical execution by those agencies which the State is, from necessity, compelled to use; and that, by reason of the failure of the officers to perform their duties, the titles were rarely valid. Recognizing this, the Legislature has provided a remedy by which the purchaser at tax-sales may be secured in any event against loss.

Appellant, then, was entitled to relief unless the land was exempt from taxation, or unless the taxes had been previously paid. An attempt was made to prove the payment of the taxes, but, we think, unsuccessfully. Was the land exempt from taxation? If the sale for the taxes due for levee purposes, made in 1869, was valid, the land was not subject to taxation while held by the Board of Levee Commissioners, as by the express terms of the act approved February 13, 1867 (Laws 1867, p. 237, sect. 13), it is provided that such lands as are held by the board "shall be exempt from State taxation, for levee purposes or otherwise, until the same shall be sold or disposed of by the board." But this sale to the levee board was itself void, having been made on a day different

from that prescribed by law. The act above referred to (sect. 3) provided that sale of lands delinquent for levee-taxes should be made on the second Monday of May, which day, we judicially know, in the year 1869 was the 10th of May. The deed shows that the sale was made on the 18th, and it was therefore void. It being void, the land was not held by the Board of Levee Commissioners, and was not exempt from taxation.

The decree is reversed, and cause remanded to the Chancery Court, to be proceeded with in accordance with the views herein expressed.