60  293
73  726

---

## Y. W. REDMOND *v.* RICHARD BANKS.

TAX-ASSESSMENT. *Land of individual assessed to State. Effect of sale.*
  Where the land of an individual was assessed as State land, and the assessment-
  roll approved by the Board of Supervisors without any corrections of such
  assessment, and the tax-collector sold the land for taxes, upon that assess-
  ment, the sale is void because of the invalidity of the assessment, there being
  no written authority to the collector to make the sale, and the assessment it-
  self indicating that the land should not be sold. If the land had been assessed
  to the wrong individual, the assessment would have supported the sale, as the
  law requires all lands assessed to individuals to be sold for taxes due on them
  at a specified time, while it directs that no State lands shall be sold for taxes.
  CAMPBELL, J., dissented.

APPEAL from the Chancery Court of Holmes County.
Hon. R. W. WILLIAMSON, Chancellor.

A statement of the case will be found in the opinion of the court.

*Hooker & Wilson*, for the appellant.

When it is considered that the assessment is the very foundation of an authority for the tax-collector to sell, when we consider that it is the judgment under which he acts in disposing of the citizen's property, when we consider that his acts in the collection of taxes levied are *in invitum*, and the citizen consents to nothing, and especially when we regard the effect that is given to an assessment-roll by the statutes as to their conclusiveness, we think it requires but little knowledge to demonstrate to the court the error of the lower court in rendering the decree confirming the tax-title in this case. Lands belonging to or held by the State cannot be sold for taxes. Sects. 1, 20 and 46, Revenue Act 1878, under which the lands in controversy were sold. The statutes require State lands to be listed in a certain way. The court will observe that the lands were listed in the way required by the statutes as State lands. State lands being exempt from sale for taxes, and this land being listed as State land, clearly could not be sold. The sheriff or tax-collector had no warrant or execution in his hands to collect any taxes out of these lands, and he stepped outside of his authority when he thus attempted to sell lands which he had no warrant to sell. In the language of this court in *Davis* v. *Vansarsden* (unreported), from his source of information and authority, there was no taxes due or charged against said land, and he was not authorized to collect any taxes out of them by his warrant. The copy of the roll which he possesses is the source of his authority, the fountain of his right to sell, and without legislative authority he cannot go beyond this. It is hardly worth the while to cite authority to show that the assessment-roll is the very foundation of the jurisdiction and power of the tax-collector to sue.

The State has devised a scheme by which to subject to taxation the property of her citizens. The foundation is the assessment-roll, made and approved according to law. The land

subject to taxation and liable to be sold must appear thereon as such. It may be assessed to the wrong owner, but the tax is charged against it in that roll, and if unpaid, it can be sold. But where lands are put on that same assessment-roll, in accordance with the requirements of the law, as not subject to be sold by the collector, we deny and repudiate the doctrine that the tax-collector can travel outside this roll, and sell what he is not authorized to sell, and, in fact, what he is forbidden to sell. The copy of the roll in the collector's hands has been frequently likened to an execution. 52 Miss. 693; 55 Miss. 1. If this comparison be true, he cannot exceed the power conferred upon him by the execution. The collector's powers are limited and controlled by it. We find the land assessed to the State and we know that the lands so assessed are exempt from sale for taxes. Such lands can only be sold by the auditor. Now, as to the conclusiveness of that assessment, sect. 27 (Acts 1878) Revenue Law, 38, says in so many words, " that said rolls shall be final and conclusive as to the assessments contained therein." It is a statutory provision and its force cannot be escaped or its effects argued away. The court, in *Davis* v. *Vanarsden*, says it is final and conclusive upon the State, and its revenue officers, as well as upon every one else. It is like all other judgments. See 52 Miss. 483. It is true that this roll may be changed. This can be done, however, only in the method pointed out by the provisions of the statute.

1. The assessor may add to it before action on it by the Board.

2. The tax-collector may assess and collect on lands left unassessed, or that may become liable before next assessment, and he shall report such additional assessment to the Board of Supervisors.

3. Board of Supervisors can order their clerk to make examinations and report erroneous assessments. These changes must be made upon the roll. The tax-collector had no power to reassess this land. But this subject may be dis-

missed with the remark that whatever power he may have had to change the assessment-roll, it appears that he never did make any change, but the property was sold as State land.

*Gwin & Noel*, for the appellee.

Sect. 2, of the Revenue Act of 1878, provides that " it shall not be necessary to the validity of an assessment, nor of a sale of land for taxes, that it shall be assessed to its true owner ; but the taxes shall be a charge on the land or personal property taxed, and the sale shall be a proceeding against the thing sold, and shall vest title in the purchaser without regard to who may own the lands or personal property when assessed or when sold." This section applies to all property subject to taxation, and which can be sold for delinquency, and in another portion it declares that taxes shall be a lien from the first day of February, in the year they are assessed, " and no property shall be exempt from distress and sale therefor. The first section referred to, makes ownership the sole criterion of exemption from taxation. The second makes everything properly subject to taxation liable therefor, regardless of the name in which it is assessed.

The Acts of 1878, p. 33, sect. 18, provide that " vacant land, or land exempt from taxation, shall be set down in separate columns (from the land properly taxable) without value ;" and, in addition, provide the manner of assessment of lands properly taxable and how all lands shall be designated and arranged on the assessment-roll, and then declare, " that no failure to designate the precise locality of any subdivision of land within a section, and no failure to observe any of the foregoing requirements, shall be held to vitiate the assessment or sale thereof for the non-payment of taxes so assessed, if the section, township and range, within which the land is situated be properly entered on the rolls." The same law and section, the non-observance of which appellant complains, declares that all its provisions regulating the manner of placing land on the assessment-rolls, except that of locating it in its proper section, is merely directory.

This implies that some diligence is required on the part of the owner; and when his land is so designated as to be easily found on the rolls, he should, at his peril, see that the other directions are observed in regard to it. We deny that the action of the Board of Supervisors in approving the assessment-roll of 1879, was 'conclusive as to the taxability of the land embraced in it. If it was conclusive at all on that point, it was conclusive for four years, until the next land assessment, and would be as much so on themselves as on others. If they could make a conclusive removal of the land in controversy from the reach of the tax-collector by assessing as State, or even exempt land, they could do so with all the land in their county, and thus place it four years beyond the reach of taxation, and could not themselves be affected by a *mandamus* or other proceeding.

In 52 Miss. 452, in the case of *Horn, Collector*, v. *J. & T. Green*, it was decided that the action of the Board of Supervisors in matters of assessment is only conclusive as to mere irregularities and matters of fact resting *in pais*, such as excessive valuation, etc., and was not final as to claims of exemption under statutory or constitutional provisions.

CHALMERS, J., delivered the opinion of the court.

The land of Y. W. Redmond was listed by the tax-assessor of Holmes County as the property of the State, the words "the State" being set opposite it in the column of owners. A valuation was affixed to it, as is required both as to State and private land, but no amount of tax due was run out against it in the final column reserved for this purpose as to the lands of private persons. In short, it was dealt with in all respects as was proper with regard to land belonging to the State and as was improper in relation to that of a private person.

No correction in the list was made, either by the Board of Supervisors or by the tax-collector, after the roll came into his hands; but it was, nevertheless, sold for unpaid taxes by

the latter officer and bought by appellee, who has brought this bill to have his title confirmed.

The validity of his title depends upon whether the land was validly assessed, since it is agreed by all the authorities that a legal assessment is essential to the validity of a tax-title. An assessment which ordinarily and primarily commences with the making out, by the proper officer, of a list of persons and property liable to taxation can never be said to be complete until acted upon by the revisory board, where the law contemplates action by such a board. It is settled in this State that the list made out by a tax-assessor is a nullity until in some way approved and ratified by the Board of Supervisors. The object of all the successive steps taken in assessing property is to obtain from the proper tribunal an ascertainment and declaration that the property contained on the list is subject to taxation, to fix its value and condemn it to sale, if the taxes are not paid.

The judgment of the proper authorities as to these matters is the original aim and final culmination of the whole proceeding. Without such judgment there is no assessment. The act of the supervisors in approving the roll presented by the assessor is that judgment, and fixes the liability or non-liability of the property to taxation and to sale. If any property, which should have been assessed has been omitted, the statute authorizes the tax-collector to add it after the roll has come into his hands, and having done so, to sell it if the taxes are not paid. He is to report his action in such cases back to the Board of Supervisors. In such case his act in making the addition takes the place of and has the same effect as the action of the board in approving the roll. No mistake as to the ownership of the land affects the result, since it is the land, and not the person, that is taxed; and, therefore, if the land of A. is assessed as the property of B. a sale of it conveys a good title, though the list be uncorrected.

Let us apply these principles to the case before us. There was never any judgment of liability of this land by the Board

of Supervisors, who, on the contrary, by approving the list on which it was marked as State land, in effect declared that it was exempt from taxation. And this judgment was never corrected by any officer or authority whatever. The list, therefore, instead of commanding the collector to sell it, distinctly commands him not to sell, since the statute plainly directs that he shall not sell land belonging to the State, it being exempt from taxation. The list in the hands of the collector has frequently been likened by this court to a writ of *fieri facias*, and constitutes the warrant for his action. Without it he can do nothing, nor can he do any thing not commanded by it, except by making additions in the mode and under the circumstances alluded to above. If he makes a sale without the addition, it must be null, since in such case he is armed with no warrant for selling. Particularly must this be so where, as in this case, he undertakes to disregard the plain directions of the roll by selling that which he is by it forbidden to sell. If such a title be sustained, it presents the extraordinary spectacle of divesting a citizen of his property where there does not exist, and has never existed, any written authority for so doing, and where the only existing record on the subject shows that it was improper to sell it.

Under such a system it would be impossible to give a well-advised opinion as to the title of property so sold, since the validity of the title must depend through all time on being able to contradict by parol the written recitals of the record. It is no answer to this to say that a mistake as to the ownership does not affect the validity of the sale, and that there was a mistake as to ownership in the present case. The obvious reply is, that this was not a mistake only as to ownership, but also as to liability to taxation and to sale.

A mistake as to ownership is harmless, because whether it belongs to one person or another, the property owes the tax and must be sold to pay it; but if it belongs to the State it owes no tax, and the collector is forbidden to sell it. In

such case though it has been mistakenly treated as the property of the State, and really is subject to taxation, it cannot be so dealt with, until some competent authority has so declared by correcting the blunder. Unless this be done the land has not been assessed at all.

· Reversed and remanded, with directions to take an account of amount paid by purchaser, with interest and damages, for which he shall have a lien under the statute. *Mayer* v. *Peebles*, 58 Miss. 628.

CAMPBELL, C. J., dissenting.

I do not concur in the views of the majority of the court.

The statute is: "It shall not be necessary to the validity of an assessment or of a sale of land for taxes, that it shall be assessed to its true owner; but the taxes shall be a charge on the land taxed, and the sale shall be a proceeding against the thing sold, and shall vest title in the purchaser, without regard to who may own the lands when assessed or when sold."

The proceeding is against the land, and not its owner. The important requirement is a description and valuation of the land, so as to show what is charged upon it, and it is not material that the owner's name is not placed on the roll. He should know his own, and see to it that the taxes due on it are paid. I cannot embrace the idea, that because the State of Mississippi was put on the roll as owner of the land, when it was not the owner, a different result was produced from what would have followed putting as owner the name of some individual who was not the owner. True, the land of the State is not to be sold for taxes; but this was not the land of the State, and describing it on the assessment-roll as such did not make it such. The land was the property of an individual, and subject to taxation and to sale for non-payment of taxes, if it had not been erroneously described as belonging to the State, says the opinion of the majority of the court. I reject the view that the blunder of describing the land as the property of the State had any effect whatever. It did not exempt

the land from taxes or sale for them.   It is not the owner, but the land, which is taxed, and it matters not in what name it is assessed, if it is liable to be taxed, and, in fact, is charged by being listed and valued.   The owner should not be allowed the refuge of having his lands assessed to the State, whereby to escape liability to a valid sale of them for taxes.   It is admitted, that if the land had been described as the property of some person " unknown," it would have been subject to sale. This shows how unimportant the owner's name is, and suggests the fallacy of ascribing such important consequences to the error of putting the State as owner on the roll, as results from the view of the court.

The proposition that because the land was put on the roll as belonging to the State, it was like an execution commanding not to sell that land, seems to me too fanciful.   There is danger that the supposed analogy between a judgment and execution, and the machinery for collecting taxes may be pushed too far.   It is not a close resemblance between them, rather fanciful than real, I think, and very apt to mislead, if too much relied on.

. I dissent from the view that the judgment of the Board of Supervisors, approving the assessment-roll, fixes the liability or non-liability of property to taxation and sale.   The action of the board on the roll has been held necessary, it is true.; but the liability of land to taxation and sale is determined by other facts than the approval of the roll.   The approval of the roll is a necessary step in the process of assessment of taxes, but the law fixes the liability to taxation and sale, and any judgment of the Board of Supervisors could neither tax what the law exempts, nor exempt what it taxes.

The law might dispense with the action of the Board of Supervisors altogether as to the roll ; and I do not understand that adjudging the liability of property to be taxed has been committed to the Board of Supervisors, but that its intervention is for a very different purpose.   Assessment is made by an assessor.   Correction may be made by the Board of Super-

visors, whose assent in some form to the assessment-roll has been made necessary to its finality.

I do not perceive any want of authority in this case for the collector to sell the land. It had been assessed by the assessor, and the roll was approved by the Board of Supervisors. The time for payment expired, and the taxes were not paid. If the collector had made a list of his own, and put this land as that of some person unknown, or of any person named who did not own it, and sold it, the sale would have been proper, according to the opinion of the majority.

I hold that this was unnecessary. The land was assessed, and taxes were due, and unpaid, and it was properly sold by virtue of the facts. It was not a case of property " left unassessed by the assessor," and where the collector was to assess. The land was assessed. A mistake was made in assessing it as belonging to the State, but that did not alter the fact of ownership, and the land was in truth delinquent, although it did not appear by the roll to be so ; and the truth, and not an error, should prevail.