## COLUMBUS W. MITCHELL *v*. MARY D. BOND.

1. TAXATION.   *Tax sale.*   *Lands held by levee board.*

   While lands belonged to the board of liquidating levee commis-sioners, under a valid tax sale for levee taxes, they were not subject to be again sold' for levee taxes, and if so resold, no title is thereby conveyed.

2. SAME.   *Statute of limitations.*   *Code* 1892, § 2735.

   The three years' statute of limitations, Code 1892, § 2735, providing that three years' actual occupation of land under a tax title shall cure all defects in the title and bar suits to recover the land, has no application where the land was not subject to taxa-tion at the time it was sold for taxes.

3. SAME.   *Adverse possession of part.*

   Where a deed' is void as to a part of the land conveyed, but the grantee occupies a portion thereof to which, under another deed, he actually has title, such fact does not give him con-structive possession of the other part, so as to disseize the real owner, unless the occupation be such as to raise a reasonable presumption that the rightful owner knew of the entry made under the color of title.

4. SAME.   *Code* 1892, §§ 2730, 2731, 2734.   *Scrambling possession.*

   A mere scrambling possession is not sufficient to support a de-fense of the statutes of limitations, under Code 1892, §§ 2730, 2731, 2734, barring all suits for the possession of land where defendant or those under whom he claims has been in the actual adverse possession thereof for ten years before plaintiff's cause of action accrued.

FROM the chancery court of Tunica county.

HON. A. McC. KIMBROUGH, Chancellor.

Mrs. Bond, appellee, was complainant in the court below; Mitchell, appellant, was defendant there. From a decree in complainant's favor! the defendant appealed to the supreme court. The facts are sufficiently apparent from the opinion of the court.

*J. T. Lowe,* for appellant.

The court below should have sustained the demurrer; the bill of complaint did not show a perfect title to the land in the complainant. *Pierce* v. *Hunter,* 73 Miss., 754; *Wilkinson* v. *Hiller,* 71 Miss., 678; *Chiles* v. *Gallagher,* 67 Miss., 413; *Hart* v. *Bloomfield,* 66 Miss., 100; *Griffin* v. *Harrison,* 52 Miss., 824; *Handy* v. *Noonan,* 51 Miss., 166; *Walton* v. *Tusten,* 49 Miss., 569.

Complainant's so-called redemption, from H. W. Warren, liquidating levee commissioner, is wholly insufficient, in so far as it purports to have redeemed the lands from the sale made to the levee board on the 12th day of May, 1869. This redemption is a redemption, and not a deed.

The redemption certificate specifically states that the said redemption was had by the paying of certain funds, thereby negativing the idea that the different funds, for which said lands were held, were paid, and therefore the redemption fails. These lands that were purchased by the levee board, if the sales were valid, as well as the funds derived from the sale of said lands, were held as an especial trust for the purpose of paying off the bonds, interest thereon, and attendant expenses, in the administration of the prescribed duties under the said act of 1867, p. 237; and it was beyond the power and authority of H. W. Warren, liquidating levee commissioner, to part with said land so held in trust, either by deed, redemption, or otherwise than by the payment to him of the full and entire amount for which said lands were held. This court held in *Gibbs* v. *Green,* 54 Miss., 592, that the act of 1867 was a compact entered into by and with the legislature of the state, on behalf of the state, and the authorities of the levee district on the one hand and the holders of the new bonds, issued under the said act of 1867 on the other hand; and that the legislature itself had not the power to change said compact one iota. If the said appellee stood on his deed to the state under the tax sale of 1863, and his redemption from the circuit clerk, Dunaway, of said lands, in

1873, then the demurrer should have been sustained; for the said sale of 1863 was in part for taxes due for confederate war purposes, and said sale was therefore void. *Dogan* v. *Griffin,* 51 Miss., 782; *Bailey* v. *Fitz-Gerald,* 56 Miss., 586.

When appellant entered under his deed, and went to clearing and improving the land, his possession was not limited to the land he bought in said section 5, or to the lands he bought in said section 9, or to the lands he bought in said section 4, but it was coextensive with the boundaries in the calls of his deed. *Wilson* v. *Williams,* 52 Miss., 487; *Green* v. *Irving,* 54 Miss., 450; *Davis* v. *Davis,* 68 Miss., 478; *Taylor* v. *Buckner,* 12 Am. Dec., 357; *Riley* v. *Jamerson,* 14 Am. Dec., 25 (93 Am. Dec., 448); *Hunnicutt* v. *Barnes,* 26 U. S., 113. And appellant continued clearing and improving said land, exercising ownership over all of said land until said land was sued for in this cause twenty years after he bought and entered on same. Appellant's actual occupation and adverse possession for more than ten years of said land had ripened into a perfect title. *Geohegan* v. *Marshall,* 66 Miss., 676.

Under the ten-year statute of limitations, which is set up by appellant in this cause, he was clearly entitled, under the showing made, by all the testimony in the case, to have been decreed the rightful owner of the land in controversy; likewise, the three years' statute of limitations, pleaded by him, in his defense in this cause was well taken; and under the facts, the court should have dismissed complainant's original bill.

*Mayes & Longstreet* on same side.

Appellant had a good title by ten years' possession, which title vested in him in the beginning of the year 1891, ten years before this suit was brought. *Hanna* v. *Renfro,* 32 Miss., 125; *Welborn* v. *Anderson,* 37 Miss., 155; *Metcalfe* v. *McCutchen,* 60 Miss., 145; *Jones* v. *Gaddis,* 67 Miss., 761; *Brougher* v. *Stone,* 72 Miss., 647; *Railway Co.* v. *Buford,* 73 Miss., 494.

The case of *Brougher* v. *Stone* is especially pertinent here

because it shows that where one deed contains two lots of land contiguous, the actual possession of one is also possession of the other.

This case does not fall within the special rule laid down in the case of *Railway Co.* v. *Buford*. In that case both the adverse claimants were actually upon the land in controversy and the court held that the possession of the unenclosed lands would be attributed to that one of the two claimants who finally showed the superior title. That special feature of that case does not apply here for the reason, as shown, that neither Mrs. Bond nor any of the Miller people were ever in actual possession of any of this section, or, indeed, were ever on it, in even the most accidental and transient way, until after appellant's title had become vested. 3 Washburn on Real Property, 167, 168; *Webb* v. *Richardson*, 42 Vt., 465; *Kimball* v. *Storm*, 65 Calif., 116; Buswell on Lim. and Ad. Poss., 353; 1 Am. & Eng. Ency. Law, 824; 23 Am. St. Rep., 159; 34 Iowa, 564; 66 Iowa, 684; 56 Iowa, 381; 58 Tex., 570; 61 N. Y., 52; *Smith* v. *Keyser*, 115 Ala., 455.

The payment of taxes by the Millers or Mrs. Bond did not constitute an interruption to Miller's estate, nor is it in itself any evidence of ouster of him by her. 1 Am. & Eng. Ency. Law, 831, and cases cited; 95 Pa. St., 72; 76 Mo., 63; *Reddick* v. *Long*, 124 Ala., 260; *Wiggins* v. *Kirby*, 106 Ala., 262; *Chamberlain* v. *Abadie*, 48 La. Ann., 587.

*W. J. East*, on same side.

*Patterson* v. *Durfey*, 68 Miss., 779, controls in this case. *Hoskins* v. *Railroad Co.*, 78 Miss., 768, in which *Patterson* v. *Durfey* was modified, does not necessarily overrule the doctrine long acquiesced in by parties in this state because in the last mentioned case the land had never been the subject of state taxation, and, therefore, could not be delinquent. But in the case at bar, the land was subject to taxation and could be delinquent. It had been legally sold for taxes, although perhaps an effort

had been made to redeem it. The truth is, it was still condemned and subjected by a solemn decree of this court as property of the levee board, and we contend that the three years' occupancy of lands under tax sales does apply, and that Mitchell's occupancy of the twenty-five acres on the east part of section 4, undisturbed for a longer period than three years, perfected his title and rendered his holding unassailable.

*F. A. Montgomery,* for appellee.

The complainant, appellee, has in her proof fully met the requirements of the law as to proving her title to the land in controversy. She deraigned a perfect title in herself, coming down from the original patentee to her, and no argument was made against her title in the lower court.

The proof is abundant that she has been the sole and undisputed owner of the land in controversy from the time that her father's estate was divided by the chancery court of Tunica county, between herself and her two brothers, Charles A. and Austin Miller, in the year 1874, down to the present date; and while the answer of the appellant denies the fact, no effort was made to dispute it on trial of the cause in the lower court, and no successful effort could be made.

It is equally clear and undisputed that either the complainant, or one of her brothers for her, or her husband, Judge Bond, of St. Louis, or her former guardian, Captain McNeal, have continuously, every year, since this land was redeemed from the tax sale of 1869 by A. T. McNeal, guardian, to wit, in October, 1873, paid all taxes, state, county and levee, which were assessed against the land in controversy.

It is equally undisputed and clearly proven that neither Captain McNeal, when he was guardian of the complainant, nor Austin nor Charles Miller, when they acted as her agent, nor Judge Bond, her husband, nor herself, ever had the slightest intimation or knowledge that the appellant or any one else

pretended to have any adverse claim to the land in controversy until within a very few months before this suit was brought.

It is very clear, therefore, from this record that the complainant, appellee, must prevail in this suit, unless the defendant, appellant, has a good tax title to the land.

While many of the tax receipts are lost, it is competent to prove in this state of the case by parol evidence that the taxes were paid. *Perret* v. *Borries,* 78 Miss., 934.

The appellant has no paper title to the land in controversy except his deed from Gwin and Hemingway, commissioners, purporting to convey a liquidating levee tax title of date October 14, 1880.

This deed is void and conveyed to the appellant no title because the record shows that the only sale to the liquidating levee commissioners for taxes was a sale in 1869 by I. Boatman, sheriff of Tunica county, and the record further shows that Captain McNeal, the guardian of the complainant, and her brothers, in October, 1873 redeemed this land from all sales to the liquidating levee commissioners and obtained a deed of redemption from H. W. Warren, liquidating levee commissioner, reconveying it to the said owners.

That he also redeemed it from any forfeitures to the state from C. W. Dunnaway, circuit clerk, under the act of 1872, p. 9, and act of 1873, p. 91.

The board of liquidating levee commissioners was incorporated in 1867, and this court is entirely familiar with the object and purposes for which that board was created. Laws 1867, p. 237.

Under that act the sheriff was made the liquidating levee tax collector in the several counties, and thereunder the sheriff of Tunica county sold the land in controversy in 1869 for taxes due the liquidating levee board.

In 1871 this act was amended and it was provided that in lieu of the three liquidating levee commissioners, constituting the board, there should be appointed one liquidating levee com-

missioner, who should be the successor of the old board of liquidating levee commissioners, and who was vested with all of the titles to lands which were in the said liquidating levee commissioners, and he was authorized to sell and convey the same and issue redemption certificates. Laws 1871, pp. 57, 60, 61, 62.

Under this last mentioned act, H. W. Warren became the liquidating levee commissioner, and it was from him that the land was redeemed in 1873.

There nowhere appears to have been any sale to the state, although there appears a redemption from the circuit clerk of Tunica county, in June, 1873.

There also appears in the records a sale in January, 1873, of this land to Levee Board No. One, which was a different corporation, created in 1871, for the purpose of building and maintaining a line of levees. Laws 1871, p. 1.

The sale to the No. One Levee Board, however, was void, because at the time it was made, to wit, in January, 1873, the land in controversy was the property of the board of liquidating levee commissioners, under the I. Boatman sale of 1869, and it was, therefore, not subject to sale for No. One levee taxes. *Mayer* v. *Peebles,* 58 Miss., 628.

The land in controversy being therefore, in 1873, purchased or redeemed by the owner from the liquidating levee sale, it was improperly listed in the lands involved in the suit of *Gibbs* v. *Green,* 54 Miss., 610.

In that case the supreme court, holding the abatement act of 1875 to be unconstitutional, so far as it affected the titles of the liquidating levee board to lands forfeited to them for taxes, say that the court may direct a sale of the land, but cannot interfere with the lands which had been redeemed.

The redemption or purchase of the land in October, 1873, therefore extinguished the tax title, and placed the owners in *statu quo*. Black on Tax Titles, 197.

The pretended tax title under which the appellant claims is, therefore, void and extinguished.

The appellant, claiming under the void deed, attempts to defend himself upon the plea of ten years' adverse possession, but the proof does not bear him out. His only proof of possession extending over that length of time is that he had, during the several years succeeding the year 1881, cut some boards and wood off of the land, and the testimony of three witnesses of a later date, to have heard him claim to own the land, and even these three witnesses were evidently not believed by the chancellor.

Adverse possession means actual visible and exclusive appropriation of the land, commenced and continued under a claim of right, and every presumption is to be indulged in favor of the true owner. *Magee* v. *Magee,* 37 Miss., 138; 1 Am. & Eng. Ency. Law, 888, 889.

The term adverse possession is founded on the presumption of the true owner's knowledge of the same, and the court will not be warranted in presuming it in every case. *Alexander* v. *Polk,* 39 Miss., 737.

Adverse possession under colorable title cannot be set up where the party knows the title is not good. 1 Am. & Eng. Ency. Law, 868.

But the proof shows, by the appellant's own admission, that he never did claim to own this land.

He actually wrote a letter in 1889, to the brother and agent of appellee, addressing him as Austin Miller, agent for Mary D. Miller, or Bond (spelling it Bode), stating that she owned this land and asking her to sell forty acres of it to W. M. Pratt.

In the case of *Hoskins* v. *Illinois Central Railroad Co.,* 78 Miss., 768, our supreme court has overruled the cases of *Patterson* v. *Durfey,* 68 Miss., 779, and *Carlisle* v. *Yoder,* 69 Miss., 384. And it is now held that the three years' statute does not apply in the case where the land was not delinquent for taxes.

Argued orally by *Edward Mayes,* and *W. J. East,* for appellant; and by *F. A. Montgomery,* for appellee.

WHITFIELD, C. J., delivered the q        'on of the court.

The paper title of appellee, as der    ,ned in the bill, is perfect from the government down to the   .ppellee. The only paper title set up by the appellant is a deed made on October 14, 1880, by Gwin and Hemmingway, liquidating levee commissioners, and commissioners of the chancery court of Hinds county, in the case of Green against Gibbs, *et al.* The land was sold on May 12, 1869, by the sheriff of Tunica county, to the liquidating levee board for delinquent taxes. On October 22, 1873, appellee redeemed the land from H. W. Warren, levee commissioner. On June 4, 1873, appellee redeemed the land from the forfeitures for state and county taxes from the circuit clerk of Tunica county by redemption certificate, as provided by law at that time. There is some verbal criticism of the redemption deed from Warren, leevee commissioner, but, as we think, it is without merit. These redemptions completely reinvested appellee with the paper title to the land. The land was not sold in 1873 to the liquidating levee board because it was not delinquent for that year, nor subject to such sale. The pretended sale in January, 1873, of this land to Levee Board No. 1 was void, because at that time the land was the property of the liquidating board under the sale of 1869, and it was therefore not subject to sale for No. 1 levee taxes. *Mayer* v. *Peebles,* 58 Miss., 628. From the time of such redemption in 1873 down to the present time the appellee has paid promptly all the taxes due on said land. It is perfectly clear, therefore, that this land, thus redeemed, was not the property of the liquidating levee board, and was improperly listed amongst lands subject to sale under the Gibbs-Green decree. *Gibbs* v. *Green,* 54 Miss., 610. It was settled in the case of *Hoskins* v. *I. C. R. R. Co.,* 78 Miss., 768 (29. So. Rep., 518; 84 Am. St. Rep., 644), that the three-years' statute of limitations (Ann. Code 1892, § 2735) applies only

to lands that were taxable, and therefore subject to sale when the sale occurred. The land here was not subject to sale under the Gibbs-Green decree, because it was not of the class which could legally be sold under that decree; that is to say, not the property of the liquidating levee board. The deed, consequently, of October 14, 1880, under which appellant claims paper title, is void. From these considerations it is plain that appellant has no paper title, and, furthermore, that the said three-years' statute of limitations has no application. The only defense which appellant can invoke with any show of reason—and that is the defense which is almost exclusively insisted on here—is that he has acquired title by ten years' adverse possession. What are the facts with respect to this possession? We will briefly recount the main facts bearing on this defense. The appellee has paid all the taxes from 1873 to this time, and the land has always been assessed in her name. Appellant has never paid any taxes; nor did he ever make any attempt to have the land assessed to himself until the year 1900. He never offered to pay any taxes until about 1897, when he found they had been paid by appellee. The land is wild land, chiefly valuable for its timber. Appellee sold timber to several parties who went upon the land and cut timber therefrom, notably to Ingram Stave Company, on November 15, 1895. This company was on this land between one and two years, with the full knowledge and acquiescence of the appellant, who was living within less than one mile of this land, on an adjoining section, and was frequently at the camp and mill of the said company. At this very time appellant had a pasture for hogs which extended from his own land partly over the land in controversy, embracing some timber suitable for staves; and appellant told the agent of the stave company, J. T. Norment, when he wanted those trees, to tear down his fence and go in there and get them. Appellee, who lived in St. Louis, Mo., never heard of any claim to this land set up by appellant until 1900, when appellant served notice on Muskelly forbidding him to cut staves under a

deed made by appellee to Muskelly October 9, 1900. Appellee made three sales of timber—one to A. B. Nelson & Co., February 29, 1884; one above mentioned to the Ingram Stave Company in 1895; and the one just above mentioned to J. W. Muskelly, October 9, 1900. It appears that Nelson & Co. cut some oak timber on the land in 1886. In 1881 or 1882 appellant had a survey made of some land cornering with the land in controversy by a surveyor, George W. Owens, who says the appellant told him he expected to buy some of it from the state. At that time the surveyor did not survey section 4. That in 1896 he ran the survey line of the land in controversy for appellee's brother, C. H. Miller. That it was other land, and not this land in controversy, that he surveyed for appellant; and that throughout all these dealings he never heard appellant claim to own this land. In addition to this, appellee showed by her proof that when W. M. Pratt, desiring, in 1889, to buy forty acres of this land, inquired of the appellant, Mitchell, who owned the land, he was informed by Mitchell that it belonged to the Miller heirs, and at Pratt's request Mitchell wrote a letter for Pratt, which is as follows:

"SENATOBIA, MISS., December 16, 1889.

"Austin Miller, Agent for Mary D. Miller, or Bond:—You own section 4, township 6, range 10, in Tunica county. I want to buy forty acres of the southwest corner. There is no salable timber on this forty. The timber was cut off by Louis Nelson in 1883. I am a poor man and not able to buy more than forty acres of land in the woods.

"If you will sell, let me know by return mail, and your lowest prices and best terms on one, two and three payments. You will please write to me soon and give me an answer, for if I buy, I want to build this winter and clear up ten acres the coming year.

"Direct your letter to W. M. Pratt, in care of C. W. Mitchell, at Senatobia, Miss. Yours truly,   [Signed] W. M. PRATT."

To which he received the following reply:

"BOLIVAR, TENN., February 6, 1890.

"To W. M. Pratt, Esq., Senatobia, Miss.—Dear Sir: The land that you speak of belongs to my sister, Mary D. Miller, now Mrs. Mary D. Bond. She lives in St. Louis, Mo., and would not care to sell so small a piece of land unless she got a price sufficient to make her break section lines.

"Please write me what you are willing to give for the forty acres that you want and how much cash you wish to pay on the same. We want to sell the same if the price justifies.

Yours truly,               [Signed]     AUSTIN MILLER."

It will be specially noted with reference to this letter and the answer that it was dated in December, 1889, the answer February 6, 1890, and that the letter was addressed to Austin Miller, agent for Mary D. Miller, or Bond. Appellant attempts to explain this letter in a way not necessary to set out, but not, we think, satisfactorily. Finally, it appears from the cross-examination of appellant that he had examined the records to see if the sales under which he had bought had been redeemed from, and that he had seen and read the redemption deed from H. W. Warren, liquidating levee commissioner, to appellee and her two brothers, to this land, and he never afterwards really claimed under his paper title. This is a very important piece of testimony as bearing upon the good faith of appellant's claim to the land. In vol. 1, Am. & Eng. Ency. Law (2d ed.), p. 861, par. 4, it is said: ."While a person who accepts a defective title to land and goes into possession under it knowing the defect may, nevertheless, by virtue of his adverse possession under claim of title alone, plead the statute of limitations in bar against any action brought for the recovery of the land, yet the general rule is that possession under a defective title by a grantee who knows the defect must be limited to his actual occupancy. In other words, to entitle a claimant under color of title to the benefit of the

doctrine of constructive possession, there must be a bona fide reliance upon the merely apparent title as being good and valid. Therefore, if the instrument constituting color of title was obtained by fraud on the part of the grantee, or with a knowledge by him that it conveys no title, he cannot have the advantage of an entry under color of title." Under the testimony just mentioned it might well be held that complainant knew that his title under the deed of October 14, 1880, was void. It is true that a void deed affords color of title, and that the general rule is that one claiming title by adverse possession under a deed affording color of title has the right to have his possession treated as coextensive with the calls of his deed; but there is a well-settled exception to the general rule, which is stated as follows by this court in *Jones* v. *Gaddis,* 67 Miss., 769 (7 So. Rep., 491) : "The rule is correct, but this limitation upon the rule must not be overlooked, viz. : If the title was void as to part of the land conveyed, the occupation of that part to which the grantee had title will not give the grantee constructive possession of the other part to which he had no title, so as to disseize the real owner. To divest the rightful owner of the whole tract described in the deed, the partial occupation must be of such a character as to give rise to a reasonable presumption that the rightful owner knows that the entry was made under color of title; and, if this presumpton be not reasonable, under the circumstances of the case, the disseizin will not extend beyond the actual occupation." Citing Tiedman on Real Property, par. 696; *Bailey* v. *Carleton* 12 N. H., 9 (37 Am. Dec., 190); *Jackson* v. *Woodruff,* 1 Cow., 286 (13 Am. Dec., 525); *Osborne* v. *Ballew,* 34 N. C., 377; *Seigle* v. *Louderbaugh,* 5 Pa., 490. See, also, 1 Am. & Eng. Ency. Law (2d. ed.), 861-864, and notes, with cases cited. This doctrine is clearly set forth in vol. 1, Cyc., p. 1130, as follows : "Where the title to land is in conflict, and each claimant is in possession in part of the tract in controversy, the one having the better title has, by his occupation, constructive possession of the whole tract, except that which is actu-

ally in the possession of his adversary. The legal seizin as to the unoccupied portion of the tract follows the legal title, and the *pedis possessio* alone creates an adverse title." And also in vol. 1, Am. & Eng. Ency. Law, p. 866; "In the case where a person who has a good title to one portion of a tract of land, but a merely colorable title to another part, enters upon and actually occupies the part to which he has a valid title, it would seem, though the question has not yet been definitely settled by the authorities, that such entry and possession will not give him constructive possession of the part to which he has only color of title." Now, in this case, the deed of October 14, 1880, attempted to convey the land in controversy (section 4), and also the eastern port of section 5, which adjoined section 4. Appellee is not contesting appellant's title to section 5. Her deed embraces only section 4. Appellant's precise contention is that, since he has been in possession of section 5, which he says he does own, he is entitled, under the general rule above stated, to claim that his adverse possession extends to and embraces the whole of section 4, to which he has no paper title at all. This statement of his claim places him precisely within the exception to the general rule which is set out in the above authorities.

We are clearly of the opinion upon the facts in evidence and the law applicable to them that appellant never had anything but a mere scrambling possession, and that the court below rightfully decided this controversy; wherefore the decree is affirmed.

*Affirmed.*