LOUIS D. HERRICK, TAX COLLECTOR v. PASCAGOULA STREET RAILWAY & POWER COMPANY.

[54 South. 660.]

1. MNUICIPALITIES.  *Taxation. Valuation. Changes. Code* 1906, § 3422.

    The authority given a municipality by Code 1906, § 3422, to increase or diminish the valuation of property assessed for taxation at a meeting of the mayor and board of aldermen to be held, on ten days' notice, in September or October of each year:—

    (*a*) May be exercised only during said months, and cannot be exercised after the last day of October; and

    (*b*) The exercise of the power must be evidenced by orders entered on the minutes of the mayor and board of aldermen, and the minutes must show that final action was taken not later than the last day of October; and

    (*c*) Notice is a condition precedent and jurisdictional to its exercise in September or October.

2. SAME.  *Taxes. Levy. Limitation on amount. Code* 1906, § 3317.

    Under Code 1906, § 3317, authorizing municipalities to levy taxes for general revenue purposes not to exceed six mills on the dollar, a levy for general funds, intended as a levy for general revenue purposes, must be limited to six mills, and any excess is illegal.

FROM the chancery court of Jackson county.

HON. THADDEUS A. WOOD, Chancellor.

The railway, etc., company, appellee, was complainant in the court below; Herrick, tax collector, appellant, was defendant there. From a decree overruling a motion to dissolve a preliminary injunction the defendant appealed to the supreme court. The facts as stated by ANDERSON, J., are these:—

"The bill of complaint in this cause was filed by appellee, a property owner and taxpayer of the city of Pascagoula, against the appellant, Herrick, as tax collector of said city, to enjoin him from the collection of certain municipal taxes alleged to be illegal. An injunction was issued in accordance with the prayer of the bill. Appellant made a motion to dissolve the injunction, which was heard by the court on bill, answer, and affidavits, and a decree made overruling the motion. From this decree the appellant was granted an appeal to this court to settle the principles of the cause. It is alleged in the bill that the board of mayor and aldermen of Pascagoula, after the 31st day of October, increased the assessment of the property of the appellees above that as copied from the county roll, and therefore such increase was without authority of law, and that such board levied eight mills tax on the property within its limits for general revenue purposes, when under the law it was only authorized to levy six mills, and therefore such levy was void as to such excess, and that appellee had tendered to the city the full amount of taxes levied by it, based on the assessment as copied from the county roll, less two mills, such alleged illegal excess.

"On the motion to dissolve, the minutes of the mayor and board of aldermen were introduced as evidence and show as follows: That the board met on October 27th, and 'worked on equalization of assessment rolls,' and instructed the clerk 'to give notice to taxpayers that they would hear complaints from

October 30th to November 5th as to their assessments.' There was an adjournment to October 28th, when the board reconvened and 'worked on assessment rolls.' There was a recess to October 29th, when the board reconvened, and 'worked on equalization of assessment rolls,' and adjourned to November 1st, and reconvened, and heard 'complaints as to assessments,' and adjourned to November 2d, the time for a regular meeting, when 'complaints on valuation of property were heard.' There was a recess to November 3d, and another to November 4th, and another to November 5th, and another to November 8th, when a meeting was held at which 'Mrs. Mary Blanchard protested against the valuation of her property.' There was a recess to November 9th, when on motion the real and assessment rolls 'as revised by the board' were approved. At a meeting on November 10th this order was entered levying taxes:

" 'On motion of J. H. Cook, duly seconded, a tax levy of fifteen mills was ordered and prorated as follows: School purposes, three mills; redemption of bonds, four mills; general funds, eight mills.'

"Affidavits were introduced on behalf of the city to the effect that no property was actually raised or lowered after the 31st of October; and affidavits on behalf of the appellee that after the 1st of November the board considered protests of persons whose assessments had been raised."

*H. B. Everett,* for appellant.

The court is now asked to condemn the entire work of the board in changing values because the finished product was allowed to pass the dead line without the capstone of a final order of approval. A formal order was not necessary to the validity of changes made by the board, and certainly not as a part of the exercise of the official acts of change of values required to be done only within the time limit. It is clearly shown, that,

in this case, the assessment values were all adjusted in October, as is made manifest by the minutes of the board directing that notice be given, that the rolls were equalized and on file for inspection. If it were necessary that the minutes show an approval of the equalized rolls this was such an approval. It has been held that the order of the board of supervisors directing the clerk to make and transmit to the auditor copies of the assessment rolls of the county was a sufficient expression from which to infer an approval.

But it is contended that the minutes of the board indicated that they had not finished their work and closed the doors because they invited the public to an audience for hearing complaints, but it is manifest that the complaints to be considered were with reference to the equalized and approved roll that had become a final judgment so far as equalizing values was concerned where any changes were made. And this is true notwithstanding the fact that a final order of approval was yet lacking and was made and entered later.

In *Morgan v. Blewett,* 72 Miss. 903, it was held that the fact that the board of supervisors were in session longer than the three days allowed by law, and did not approve their minutes and the completed and equalized roll until the September meeting, did not invalidate the roll or the changes of values made at the proper time. See, also, *Wolfe v. Murphy,* 60 Miss. 1; *Mills v. Scott,* 62 Miss. 526.

It was held by the chancellor in this case that the order of approval of the roll was a judicial act as part of the altering of the roll by changes of values and that without such order the work was incomplete and void as to all changes made. The alterations were made by the board in a manner expressly approved in *Investment Co. v. Suddoth,* 70 Miss. 417, saying at page 422: "The mere clerical act of noting on the roll the increase of the valuation may be done by the assessor or by the

clerk of the board if under its direction and· in pursuance of its judgment." In that case the changes had actually been ordered and made at a time and place not allowed by law but were rendered valid by an order of the board afterwards made at the proper time and place.

But it is said the minutes of the board of aldermen and the notice given and hearing of objections indicated that the acts done in October were not conclusive because such acts manifested an intention on the part of the board to leave same open for objections with a purpose of further corrections or alterations in response to objections before final approval. These orders, together with the affidavits of two members of the board and of the tax collector, showed that the roll had been completely equalized and the entries actually made of all changes by or under the direction of the board and that the completed roll so legally and properly made up placed on file for public inspection. After this was done and the time for changes generally authorized to be made had elapsed the board was powerless to undo what it had done. If it be considered that a. general order of approval of this roll was necessary .to its validity as a final warrant for the collection of taxes, unless it is also held that such order must be made before the expiration of the time for changing values there can be no complaint that the act of final approval was purposely postponed during the hearing of objections. The contention that the circumstances of postponing this final order and notice that objections would be heard beforehand indicated that the board was not going to stop at the time limit is to assume that the board intended to do a wrong and do things that the law did not allow instead of the more charitable and lawful assumption that they were not going to do anything unlawful. But having done a final act in a lawful time and manner in the making of proper changes in the roll, the mental reservation on the part of the board of a

determination to undo the lawful acts in a time and manner not lawful simply because of a want of a proper regard for law could not relate back and invalidate valid acts.    If a valuation had been raised by the board as a deliberate official act and entered on the roll it was completely done and who can say it was not legally and timely done, especially when it was finally approved, because before its approval objections to it were invited, made and heard without any change being made?

But were there no acts of correction or change that the board could do or make after October had come to an end?    Suppose no changes had been made in the roll as it came from the county roll and that roll had been approved by formal order of the board as late as the first regular meeting in November, would the roll be void?    There is no law or reason for so holding.    Where then is the difference between the roll copied by the collector and the roll so copied and then corrected and equalized pursuant to notice under the statute in September or October?    In either event it wants nothing but approval.    But before it is approved in either event may not manifest errors be corrected and changes of owners entered or manifestly improper assessments stricken off and many other changes properly made on the application of persons in interest?    And who can say that this board intended more in this case even though it appear that they did unlawfully do more.

Whenever the courts come to insist on holding these boards to strict rules of technical precision without excuse or reason therefor in the conservation of some public or private right, it will simply work disaster to the public interests and render taxation well nigh impossible.

Under section 3317 of the code cities are allowed to levy an *ad valorem* tax, without reference to the taxpayers for authority, six mills for general revenue purposes and six mills for general improvements not provided for by special assessment.    Mani-

festly these are regarded as two items of current expense common in all cities.  There is nowhere a statutory requirement for keeping these funds separate unless such requirement may be inferred from this section.  The proof shows that the funds were needed for both purposes not exceeding six mills for either and they were covered into one fund known as general fund.

*Ford, White & Ford,* and *McWillie & Thompson,* for appellee.

It has been recently settled in a very clear and definite decision of this court that Code 1906, § 3422, fixing the months of September and October in each year as the time when municipal boards may increase or diminish the valuation of property as assessed for taxation, is mandatory and that after the consideration a thing *in fieri,* inchoate and incomplete, the board over the subject.  *Biloxi v. Biloxi Real Estate Co.,* 94 Miss. 653, 48 South. 729.

We do not dispute the proposition that the copy of the county assessment would have been sufficient in itself for all purposes of municipal taxation if the board had so treated it, but we respectfully insist that if that assessment is departed from, and the board enters upon the work of changing valuations, such work must be completed within the time allowed by law.  If after the expiration of such time the roll still remains under consideration a thing *in fieri* inchoate and incomplete, the board continuing to tamper with it, we submit that it is void, as to the assessments reduced and those unchanged as well as to those increased after October 31st, in other words, that the whole roll is void.

The question is not as counsel for appellant seems to think one relating only to the absence of an order of approval entered on the minutes of the board within the time limited by law, though we regard that as a sound objection in a case where a

roll has ceased to be the one approved by the supervisors and in fact has become one not finally approved by anybody. The chief objection has no relation to the entry of an order of approval, but was predicated of the fact that the roll was not completed within the time limited by the statute.

There being no separate municipal assessment, the board under the law had to keep the copy of the county roll as the basis of valuation, but the course it pursued had absolutely no reference to such copy or the county assessment that it showed. The board made an attempt to make certain changes in valuation by pencil memoranda, and directed the clerk as to all other property to bring forward all valuations *en masse* from its own roll of the previous year, 1908. This was a proceeding whereby the county roll as it stood in 1909 was entirely ignored was wholly outside of the law. Our code contemplates an annual assessment by municipalities, and where a separate one is not made under municipal authority, a copy of the county assessment as it stands at the time shall constitute the municipal assessment so that all changes of assessment made by the county authorities since the last preceding municipal assessment shall enter into the new municipal assessment for the then current year. If in the interval a man's horse had died or been stolen or his house had burned down or caved into the sea the county assessment showing the change occasioned by these events would be the basis of assessment, and the board must either let the county assessment stand, or take up separately the particular items of property and fix new calculations upon them, exercising in each instance its judicial functions. To adopt wholesale what they thought to be proper valuation a year previously with reference to a different county assessment does not satisfy the requirements of the law. They cannot jump back either to their own assessment for a previous year or the county assessment for a previous year; if they can jump back one year,

they can jump back ten, and can altogether eliminate the county assessor then in office whose valuations on the existing county roll constitute the legal basis of the municipal assessment. In such case, there being no municipal assessment, the board would do the whole work of assessing, which is clearly contrary to law. That no assessment can be valid in which an assessor does not participate seems to be well settled. The decided cases relate to county assessments, but a municipal assessment must rest upon a valid county assessment and is thoroughly analogous in respect to the things essential to its validity. *State v. Tonella,* 70 Miss. 701; *Hawkins v. Mangum,* 78 Miss. 97.

The case of *Investment Co. v. Suddoth,* 70 Miss. 417, can avail nothing in favor of the appellant's contention. The irregularities complained of in that case were all cured by a formal approval of the assessment subsequently entered on the minutes of the board of supervisors at the proper time and in the proper district of the county.

The levy in this case was excessive. The power of the municipality in respect to taxation is expressed in Code 1906, § 3317. The words "general revenue purposes" for which the board was empowered to levy a six mills tax mean those general purposes or expenditures for which revenue is necessary, and the words "general expenses" can be attributed to no other subject embraced in the statutory authorization. They cannot be attributed to general improvements, for a special authorization covers improvements, under which the board could levy a like tax of six mills on the dollar. The power given to a city by charter to borrow money for general purposes has been defined to mean such ordinary governmental purposes as are carried out with revenues derived from taxation. *Brenham v. Bank,* 144 U. S. 173. Similarly general expenses when used in reference to the levy of taxes must mean like ordinary governmental

purposes, and have no reference to another class of expenses especially provided for, as expenses for improvements.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

Two questions are presented for decision. First, whether the increase made by the mayor and board of aldermen in the assessment of appellees' property, over that as copied from the county roll, is void; and, second, whether the levy of taxes, in excess of six mills for "general funds," is void. Whether the entire assessment and entire levy of taxes are void is not brought in question.

Code 1906, § 3422, is as follows: "The mayor and board of aldermen of a city, town or village, may, at a regular or special meeting, to be held in September or October in each year, increase or diminish the valuation of property as assessed for taxation. Ten days' notice of the meeting at which such changes are to be made shall be given by posting written notices thereof in five or more public places in the municipality, and in cities the notice shall also be published in a newspaper, if there be one published therein. Any person aggrieved by the action of the mayor and board of aldermen may appeal therefrom to the circuit court as in other cases of appeal, and the same shall be tried *de novo* in the circuit court."

The authority given the board by this statute to "increase or diminish the valuation of property as assessed for taxation" cannot be exercised after the 31st day of October. *City of Biloxi v. Biloxi Real Estate Co.,* 94 Miss. 653, 48 South. 729. It is argued, however, that if the equalization actually takes place in October, and is merely approved by the board in November (as is contended to be a fact here), it is a compliance with the statute. The board is without power to equalize the assessments at any time without first having given the notice provided

by the statute.   Such notice is a condition precedent to the exercise of the power.   It is jurisdictional.   In this case the board made an order on October 27th, directing the notice to be given of a meeting to be held from October 30th to November 5th, which was less than ten days from the giving of such notice, and therefore of no effect whatever.   So the equalization made by the board is void, regardless of when made.

Code 1906, § 3317, provides that municipalities may levy taxes as follows: "For general revenue purposes, not to exceed six mills on the dollar in any one year; for general improvements, excepting improvements for which special assessments are levied, not to exceed six mills in any one year."   The chancellor found, as a fact, that the levy of eight mills for "general funds" was intended as a levy for "general revenue purposes," and therefore two mills in excess of what was authorized.   In our judgment, the finding of the, chancellor is amply supported by the testimony.

*Affirmed and remanded.*

## SUGGESTION OF ERROR.

After the delivery of the foregoing opinion counsel for appellant presented an elaborate suggestion of error.

ANDERSON, J., delivered the following response to the suggestion of error.

It may be conceded that the mayor and board of aldermen gave the notice prescribed by Code 1906, § 3422 (though the record does not show such notice), and that a meeting was held in pursuance thereof; still the action of the board, in attempting to equalize the assessment, was void, because not completed before the 1st day of November.   The action of the board, in making the equalization, must be evidenced by proper order or orders on its minutes.   It can act in no other manner.   The

minutes of the board, beginning on October 27th and ending on November 9th, show conclusively that no final action had been taken on the equalization of the assessments until after November 1st. Complaints of taxpayers, as to their assessments, were being heard on November 1st, 2nd, and 8th, and on November 9th the rolls, "as revised," were approved by order entered on the minutes. If final action had been taken before the 1st of November, what authority had the board to hear complaints up to November 9th? There is no escape from the conclusion that final action was not taken until the 9th of November. The board had no right to hear complaints after the 31st of October. The matter should have been settled not later than that time.

*Suggestion of error overruled.*