WENTWORTH, et al. *v.* FORNE, et al.

No. 42174 February. 5, 1962 137 So. 2d 166

*Amy Burkett*, Ocean Springs, for appellants.

O. L. McLeod, Pascagoula, for appellees.

ETHRIDGE, J.

Appellants, Mr. and Mrs. Bion C. Wentworth, filed this suit in the Chancery Court of Jackson County against Fred L. Lemon and Mrs. Myrtle D. McMurtray, who are the real appellees, and all other persons claiming title to a described piece of land in Ocean Springs. Its purpose was to confirm the Wentworths' title to the tract, and to cancel certain deeds as clouds on the complainants' title. The defendants, Lemon and McMurtray, filed an answer, but no cross-bill. They claimed record title to parts of a small strip of land on the south side of complainants' lot. After hearing, the chancery court decided that, as to the small tract in dispute, complainants had no record title and no title to the same by adverse possession, because of an exception to the color of title doctrine. The decree confirmed complainants' title to their large lot, as to which there was no dispute. The bill of complaint was dismissed as to the small tract.

The United States patented the property in 1849 to Andrew Forne. Complainants' bill then deraigned their title through mesn conveyances from persons other than Forne. In 1888 the title vested in Mrs. Francesca V. Garrard. Defendants' answer admitted that the record title vested in Mrs. Garrard. They claimed under the Garrard chain. In short, Mrs. Garrard is the common source of title of all parties.

This case is concerned with the ownership of a strip of land 100 feet wide, east and west, and 52 feet in depth, north and south, on the west side, and 53 feet in depth, north and south, on the east side. Complainants and their predecessors own a lot facing north on

the south side of Iberville Avenue, in Ocean Springs, fronting on that avenue for 100 feet and going back 310 feet to the south. This controversy is over the 52 by 100-foot strip on the south side of the Wentworths' lot.

Mrs. Garrard, the common source of title, owned this and other adjacent property. Title later vested in her son, who in 1908 conveyed to Drysdale the present complainants' lot facing Iberville Avenue, under the following description: "That certain parcel or tract of land designated and described as beginning at that certain point on the south margin of Iberville Avenue at a distance of 257 feet east from the point of intersection of the south margin of Iberville Avenue with the east margin of Ames Avenue; *thence running south for a distance of* 310 *feet;* thence running east and parellel with Iberville Avenue for a distance of 100 feet; thence running North and parellel with the line of the West boundary of said lot for a distance of 310 feet to the margin of Iberville Avenue, thence run West for a distance of 100 feet more or less to the place of beginning." (Emphasis added.)

Under this description, Garrard did not convey to Drysdale the 52-foot deep tract on the south side of this lot. Record title to it remained in Garrard. In 1909 Drysdale conveyed the property under the same description to Tardy, who in 1915 conveyed to Guthrie, under the same description, except that he added "thence running south for a distance of 310 feet *more or less.*" (Emphasis added.)

In 1920 Guthrie and others deeded the land to Bell. The description in that deed for the first time called for the additional 52-foot strip on the south side of the 310-foot lot. That description in part ran "thence south 310 feet more or less to the property of E. L. Tardy . . . . The said property being bounded on the West by J. K. Lemon, and on the south by E. L. Tardy, . . . ."

In other words, although the grantors had a good record title to only the 310 feet of depth fronting on Iberville Avenue, this deed purported to extend the lot an additional 52 feet south, covering the disputed strip, by running the property south to the property of Tardy, which concededly is on the south side of the 52-foot strip. The calls of the deed cover all of the land between the Tardy line and the south line of Iberville Avenue, including the strip claimed by both complainants and defendants. There were subsequent conveyances into complainants under this description.

In 1959 defendants, Lemon and McMurtrary, purchased the record title to the 52-foot strip from the heirs of Mrs. Garrard. Shortly thereafter this suit was filed.

The record reflects, and the chancellor found, that the main residence on the north end and also a smaller residence on the north and east side of the property are on the original 310 feet. They have been occupied continuously and adversely by complainants and their predecessors in title for 40 years, shortly after Bell purchased from Guthrie in 1920. The chancellor found, and there is substantial evidence to support him, that there has been no actual occupancy of the 52-foot strip of land in question, on the south side of the 310-foot lot, from the time of the deed from Guthrie to Bell in 1920, up until the defendants occupied it in 1960; that this small strip north of the Tardy line and south of complainants' 310-foot lot "has been a jungle during that entire period of time with actual occupancy by no one".

 █ Appellants contend that the chancery court erred in finding that the common source of title of all parties was Francesca Garrard; that their deraignment of title reflected record title was in the patentee, Forne, or his unknown heirs or devisees. However, by their pleadings they are precluded from asserting this theory at this time. Their bill of complaint purported to "deraign their title" to the land. After reciting the patent

to Forne, it alleged that thereafter Chase conveyed the property to Clark in 1874, Clark conveyed a portion to Weed, who conveyed to Mrs. Garrard, and that Clark conveyed the remainder of the property to Mrs. Garrard in 1888; that she died "seized of the above described property", and her devisee conveyed the north 310 feet to Drysdale. The bill averred that the records of conveyances in Jackson County had been destroyed several times by fire, and for that reason records of conveyances from the patentee had been lost and destroyed.

In short, complainants' bill deraigned record title to the land. Defendants' answer admitted deraignment into Mrs. Garrard, and there was no issue before the court as to the common source of title being Mrs. Garrard. Hence the chancellor properly found she was the common source. Appellants cannot abandon the averments in their bill for the first time in this Court. Where both parties claim under a common source, there is an admission by each that the title was in that source. People's Bank v. West, 67 Miss. 729, 7 So. 513 (1890). Appellants adopted that theory of the case and the facts. Defendants admitted them. They cannot now change that theory and basis of the suit. Griffith, Miss. Chancery Practice (1950), Sec. 613.

■■ Appellants and their predecessors in title for forty years have occupied the residence on the north end of the original 310 feet to which they had a good record title. The chancery court was correct in confirming their estate in that lot. However, as found by the chancellor, there has been no actual occupancy of the 52-foot strip of land in question, on the south side of this 310-foot lot. Nevertheless, appellants assert that by color of title they have obtained a good adverse possessory title to the 52-foot strip. Adverse possession under color of title ordinarily extends to the entire tract described, although the actual possession may have ex-

isted only as to part of it. Native Lumber Co. v. Elmer, 117 Miss. 720, 78 So. 703 (1918); 2 C. J. S., Adverse Possession, Sec. 183.

 However, an exception to that doctrine is controlling here. It may be defined as follows: Where a deed is void as to a part of the land conveyed, but the grantee occupies a portion to which he received and actually has title, such fact does not give him constructive possession of the other part to which he has no title, so as to disseize the real owner. If the title is invalid as to part of the land conveyed, the occupation of that part to which the grantee has title will not give a grantee constructive possession of the other part, to which he had no title. Occupancy by a claimant of land to which he has valid title will not extend by constructive possession to another area not actually occupied and to which his title was invalid. Jones v. Gaddis, 67 Miss. 761, 7 So. 491 (1890); Mitchell v. Bond, 84 Miss. 72, 36 So. 148 (1904); Leavenworth v. Reeves, 106 Miss. 722, 54 So. 660 (1914); see also Cook v. Mason, 160 Miss. 811, 134 So. 139 (1931); 4 Tiffany, Real Property (3d Ed., 1939), Sec. 1155, pp. 462-464. In brief, when the land involved is, in part, occupied by the real owner, the adverse possession, even when this possessor has color of title, is confined to the area actually possessed. 6 Powell, Real Property (1958), Sec. 1017, pp. 729-730.

This rule is stated in 2 C. J. S., Adverse Possession, Sec. 184, p. 775, as follows:

"Good title as to part of land. Where, as to a part of the land to which the color of title applies, the instrument is sufficient to transfer a good and sufficient title, and it is upon this part only that there is entry and occupancy, possession will not be extended by construction to other parts purportedly conveyed, but really owned by others unless such others are precluded, by reason of fraudulent or misleading statements inducing claimant's acceptance of the instrument, from assertion

of their superior record title; and this is true despite the recording of the instrument by claimant, or the marking of a boundary to surround all the land claimed, where not joined to any acts reducing the land included thereby which is outside claimant's true ownership, to possession.''

The reasons for this exception to the color of title doctrine are said to be that courts will not presume that one who enters upon land of his own does so with the intention tortiously to take possession of other adjacent land, to which he does not have a good title, without his having entered on it. His intention will be construed to be in accord with the law until a contrary one is manifested by his acts, which show a purpose to commit a tort and to take possession of the property to which he has no title. Kentucky Coal Lands Co. v. J. D. Hughes Lumber Co., 187 Ky. 354, 218 S. W. 1024, 1026 (1920); 2 C. J. S., p. 775, Fn. 43.

 █ Applying this exception to the instant facts, appellants and their predecessors had no record title to the 52-foot strip on the south side of their 310-foot lot. The 1920 deed to their predecessor in title, Bell, purported to include in their lot the additional 52 feet. That deed and its successors into complainants conveyed to them a good record title only to the 310-foot lot. These instruments did not convey to them any record title to the 52-foot strip. They occupied that part to which they had a good title, but not the 52-foot strip to which they had no right. Hence appellants are precisely within the established exception to the color of title rule. They had no constructive possession of the part (the 52-foot strip) as to which their deed was void. Accordingly, the chancery court correctly applied this exception. Appellees are the owners of the record title to the 52-foot strip, by deed from the heirs of Mrs. Garrard. The decree properly dismissed the bill of complaint as to that tract.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington,* and *Rodgers, JJ.,* concur.

## ON MOTION TO RETAX COSTS

ETHRIDGE, J.

The decree of the chancery court for appellees was affirmed in 137 So. 2d 166 (1962). Appellants have made a motion to retax costs, accompanied by an affidavit of a competent disinterested person (Sup. Ct. Rule 22) that there were 60,877 words in the transcript made by the court reporter. Her response states frankly that she did not count or make any reasonably approximate estimate of the number of words in the transcript, but followed a "rule of thumb" of 400 words per page. Hence her bill for typing the transcript of 323 pages was on the basis of 129,200 words, or $129.20 at ten cents per 100 words. However, she does not deny the truth of the affidavit attached to the motion, as to the number of words in the transcript—60,877.

Accordingly, the court reporter's bill, based on an erroneous and excessive estimate as to the number of words, was incorrect. The motion to retax costs is sustained, and, for transcribing the testimony, the court reporter is allowed, on the statutory basis of ten cents per hundred words, the sum of $60.88. Miss. Code 1942, Rec., Sec. 1640.

The court reporter stated that she applied a "rule of thumb" used also by previous reporters on the basis of 400 words per page. However, this transcript does not average even half that much. The affidavit reflects the average number of words per page is 181, less than half of the guess made by the reporter. Since the statute fixes the compensation to be allowed court reporters, it is incumbent upon them to make a reasonably accurate approximation of the number of words in a transcript.

An asserted "rule of thumb" which has no basis in fact is not a compliance with the statute.

After the trial of the case, appellants' counsel requested the reporter to make a transcript of the testimony, without exhibits, because her clients wanted counsel "to review this testimony before they decide on an appeal." Pursuant to this request, the reporter made a "pre-appeal transcript of the testimony" as requested by appellants' attorney, which she called a "rough draft" of the transcript. Appellants' counsel does not deny she requested it. It was for the benefit of appellants.

Mississippi Code 1942, Rec., Sec. 1640, as amended by Miss. Laws 1958, Ch. 273, provides that the court reporter shall receive ten cents per one hundred words for the original and one carbon copy of his notes of the testimony and evidence. No charge shall be made for the carbon copy. The original of the transcript shall be used by the clerk in making up the record for the Supreme Court, "and no other fee shall be allowed for this part of the record." Hence in Estate of Atkinson, 227 Miss. 192, 86 So. 2d 16 (1956), it was held that the chancery clerk was not entitled to a fee for recopying as part of record the transcript of court reporter's notes, which was prepared by the court reporter pursuant to the order of a master and filed as part of master's report.

The reporter's brief in answer to the motion to retax costs states that she included in her charges for transcribing the record a charge for the "extra transcript of the testimony" thus requested by appellants' counsel prior to appeal; that she figured forty cents per page at a rate of 400 words per page for the original transcript, and added ten cents per page, or one-fourth thereof, as compensation for making the requested pre-appeal transcript. Her statement of costs did not separately itemize the cost of a pre-appeal transcript, but included the same in gross in the total bill, based upon

894

what we have found to be an erroneous computation of the number of words in the transcript.

This separate charge for a pre-appeal transcript, for the convenience of appellants' counsel, is not properly a part of court costs on appeal. Manifestly, if appellees had lost the case on appeal, they could not be charged with this cost, which was incurred wholly for the convenience of appellants' counsel, and which was not part of the appeal transcript. Nor could it be chargeable against the sureties on the appeal bond. The statute does not authorize it. We do not consider here whether a pre-appeal transcript of the testimony, made at the request of counsel for both sides, is properly a part of the court costs. The instant pre-appeal transcript, made for appellants' counsel only, is an obligation of appellants and their attorney, but not a part of the costs of appeal.

The total amount hereby fixed as allowable under the statute to the court reporter is $60.88. Hence the motion to retax costs by correcting the amount thereof is sustained.

Motion to retax costs by reducing amount thereof sustained.

All justices concur.